1998 ND 6

Marilyn SIMMONS, Petitioner and Appellant,

v.

NEW PUBLIC SCHOOL DISTRICT NO. EIGHT, Respondent and Appellee.

Civil No. 970159.

Supreme Court of North Dakota.

Jan. 20, 1998.

Clark J. Bormann (argued), of Bair, Bormann, Bair & Garrity, PLLP, Mandan, for petitioner and appellant.

David E. Reich (argued), of Pearce & Durick, Bismarck, for respondent and appellee.

MESCHKE, Justice.

[¶ 1] Marilyn Simmons appeals from a summary judgment dismissing her wrongful nonrenewal action against the New Public School District No. 8. We conclude the District failed to give Simmons proper notice of nonrenewal, and we therefore reverse the judgment and remand for further proceedings.

[¶ 2] Marilyn Simmons was employed as the administrator of the District from 1991 to 1996. On April 13, 1996, Marilyn received notice that the District was contemplating nonrenewing her contract. The notice stated:

> You are hereby advised that the school board of New Public School District No. 8 has voted to contemplate not renewing your contract for the coming school year for the following reasons:
>
> 1. Ability
> 2. Competence

A hearing on the contemplated nonrenewal was held on April 19–20, 1996. At the end of the hearing, the school board voted to nonrenew Simmons's contract, and on April 22, 1996, formally notified her by letter.

[¶ 3] Simmons sued the District for damages for wrongful nonrenewal. On cross-motions for summary judgment, the court dismissed the action. Simmons appealed.

[¶ 4] The dispositive issue on appeal is whether the written notice to Simmons of the contemplated nonrenewal complied with the statutory requirements. Teachers and administrators have a clear legal right to compliance with the statutory procedures for nonrenewal. *Opdahl v. Zeeland Public School Dist. No. 4*, 512 N.W.2d 444, 445 (N.D.1994). The pertinent part of the relevant statute directs:

> The school board of a school district contemplating the contract nonrenewal of a superintendent who has been employed in

the school district as a superintendent for at least two consecutive years, shall notify the superintendent in writing of the contemplated nonrenewal no later than April fifteenth.... The school board shall inform the superintendent in writing of the reasons for nonrenewal. The reasons may not be frivolous or arbitrary, must be related to the ability, competence, or qualifications of the superintendent, must be sufficient to justify the contemplated action of the board, and must be drawn from specific and documented findings arising from the formal and written evaluations of the superintendent's performance as required in subsection 2, except when the nonrenewal results from a necessary reduction in staff.

NDCC 15–47–38.2(13). This statute requires the District to notify the superintendent of the reasons for nonrenewal, the reasons must be related to ability, competence, or qualifications, and they must be drawn from specific and documented findings in prior written evaluations.

[¶ 5] The purpose of notice is to apprise the affected person of the impending hearing and to permit that person to adequately prepare for the hearing. *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978); *Municipal Services Corp. v. State*, 483 N.W.2d 560, 564 (N.D.1992). A fundamental element of adequate notice is that allegations must be stated with particularity, giving notice of specific grounds and factual claims. *In re Gault*, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967); *Layon v. North Dakota State Bar Board*, 458 N.W.2d 501, 507–508 (N.D.1990); *In re Interest of P.W.N.*, 301 N.W.2d 636, 645–646 (N.D.1981). As *Gault*, 387 U.S. at 33–34, 87 S.Ct. at 1446–1447, explains, the person should be given advance notice of the specific issues she will be required to meet at the hearing.

[¶ 6] The notice in this case gave no specific reasons or factual assertions for Simmons to meet. Rather, the notice merely parroted the language of the statute and, in the broadest general sense, asserted she was being nonrenewed for reasons of "ability" and "competence." From this cryptic notice, it was impossible for Simmons to know what specific reasons or factual incidents the District would be relying upon, and made it practically impossible for her to adequately prepare for the hearing.

[¶ 7] The lack of notice was exacerbated in this case by the District's reliance at the hearing on evidence of factual allegations that had not been previously given to Simmons. At a twelve-hour hearing, from 7:00 P.M. on April 19 to 7:00 A.M. the next morning, the board heard complaints against Simmons from a series of parents, staff members, and others who admittedly had not made their complaints to the board or to Simmons before the contemplated nonrenewal. In construing nearly the same nonrenewal statute for teachers, we held the District is limited to the reasons listed in the notice and may not develop more reasons for nonrenewal at the hearing:

> [W]e construe the statutory provision in Section 15–47–38(5) requiring the board to "give an explanation and ... discuss and confirm ... its reasons for the contemplated nonrenewal of the contract" to mean that the board, after having given the teacher written notice of its reasons for the contemplated nonrenewal, may not, at the hearing with the teacher, articulate new or additional reasons for its action nor may the board, in determining to not renew a teacher's contract, rely upon reasons not contained in the notice to the teacher and explained at the hearing.

*Dobervich v. Central Cass Public School Dist. No. 17*, 302 N.W.2d 745, 750 (N.D.1981). It would violate the statute to allow the District to give notice in its broad, generic terms and then rely upon a litany of new complaints raised for the first time at the hearing to support its decision to nonrenew.

[¶ 8] The nonrenewal procedure in this case became an ambush. When asked at oral argument to identify a single witness who testified about a problem that had been called to Simmons's attention before the nonrenewal proceedings, counsel for the District identified Earl Innis, who had testified about his dissatisfaction with Simmons's handling of a disciplinary matter. However, Innis specifically testified that he did not complain

or call the matter to the attention of Simmons or the board until two days before the April 19 hearing. Although eighteen witnesses testified against Simmons, not a one of them testified to a single instance that Simmons had been specifically advised about before the contemplated nonrenewal.

[¶ 9] The adequacy of notice may turn on the knowledge that the affected party had of the consequences of her own conduct, we said in *Layon*, 458 N.W.2d at 508. Where, as here, the record does not show Simmons had knowledge of the specific complaints and factual allegations against her before receiving the notice of contemplated nonrenewal, the cryptic, general form of the notice that advised her only that nonrenewal was contemplated because of "ability" and "competence" was inadequate to allow her a meaningful opportunity to prepare for the hearing.[1] We conclude the notice failed to comply with NDCC 15–47–38.2(13).

[¶ 10] The District asserts Simmons waived her right to challenge the sufficiency of the notice by failing to specifically object to the notice at the hearing. Although Simmons did not at the outset of the hearing make a general objection to the written notice, she did object to testimony of witnesses who had not previously complained to Simmons or the board, asserting that reliance upon these incidents violated her right to adequate notice. In the context of these informal nonrenewal proceedings, we conclude Simmons's objections preserved the question of notice for judicial review.[2]

[¶ 11] We reverse the summary judgment dismissing Simmons's claims and remand for further proceedings.

[¶ 12] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.

---

1. The District had used formal, written evaluation forms to review Simmons's performance. As submitted at the hearing, without much explanation, they were very confusing. Each form had a number of questions about the administrator's competence and performance, with several possible responses to be checked. Twice during Simmons's final year, each of the five school board members completed one of these forms to grade Simmons, and the board president then compiled their responses onto a master form. However, the president merely placed a check next to each response that any member marked, and did not tabulate how many members marked each response. For example, on a particular question there might be check marks for the highest and lowest grades, but it is unclear whether four members checked the higher grade and one the lower grade, or vice versa. This method of evaluating does not seem very informative, and gives little guidance to the subject.

2. The parties do not raise, and we do not address, whether waiver by failure to preserve an issue at the nonrenewal hearing is a valid consideration in a separate action for damages for wrongful nonrenewal. The waiver cases relied upon by the District were direct judicial appeals from administrative agency decisions under NDCC Ch. 28–32. There is no appeal from a school board's decision to nonrenew; the nonrenewed superintendent or teacher must bring a separate civil action in district court. *Opdahl*, 512 N.W.2d at 446; *Dobervich v. Central Cass Public School Dist. No. 17*, 283 N.W.2d 187, 189 (N.D.1979). Because we conclude Simmons did not waive the question at the hearing, we need not address precisely what would be necessary to challenge the notice for a nonrenewal hearing.